UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **QUALITY UPTIME SERVICES,**<br><br>Plaintiff,<br><br>BASIS SYSTEMS INC., BIAH USA, INC., BRAGA SYSTEMS INC. and EXCELL COMMUNICATIONS,<br><br>Defendants. | Civil Action No. 23-3872 (JKS) (CLW)<br><br>REPORT AND RECOMMENDATION |

**CATHY L. WALDOR, U.S.M.J.**

This comes before the Court upon Defendants' motion to dismiss or transfer this matter. (ECF No. 10). The District Court referred Defendant's application to the undersigned for a report and recommendation. In accordance with Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court addresses Defendants' motion without oral argument. Upon careful consideration of the record for this matter, and for good cause shown, and for the reasons discussed herein, the Court respectfully recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

    **I.**    **RELEVANT BACKGROUND[1] AND PROCEDURAL HISTORY**

Plaintiff Quality Uptime Services, based in Bethel, Connecticut, (Am. Compl. ¶ 2, ECF No.1-3), "is one of the nation's leading independent critical power service organizations." (*Id.* ¶

---

[1] As described in Section II(a) below, the Court must accept the factual allegations of the Complaint as true and must otherwise resolve factual disputes in Quality Uptime's favor when resolving Defendants' motion. The Court has prepared the following factual discussion with those principles in mind.

3). "Supporting a national client base across all industries, [Quality Uptime] provides [uninterruptable power supply ("UPS")] maintenance and emergency service as well as UPS battery maintenance through a team of factory-trained service engineers." (*Id.*). While the record is substantially murkier concerning the nature of Defendants' businesses, the Court understands that they provide certain services for non-party Altice in several states. (*See* Decl. of Myra Li ¶¶ 4-7, ECF No. 13 (referencing services that Quality Uptime provided for Defendants customer); Compl. ¶ 11, ECF No. 1-3 (referring to a business proposal that Quality Uptime offered to Defendants Braga Systems, Inc. and BIAH USA, Inc. for the benefit of Altice)). Each Defendant has its principal place of business in New York. (Am. Compl. ¶¶ 4-7, ECF No. 1-3).

On or about March 31, 2021, Quality Uptime approached Defendants Braga and BIAH with a proposal that "offered . . . a turnkey maintenance solution for [Altice's] critical power equipment systems" (the "Proposal"). (*Id.* ¶ 11). The Proposal "contained a 5-year term, from [May] 15, 2021 through May 14, 2026", (*id.* ¶ 12), contemplated that Plaintiff would perform work in Connecticut, North Carolina, New Jersey, New York, and Texas, (*id.* ¶ 14), and "identified with specificity the services to be provided as well as the pricing for the services." (*Id.* ¶ 13). "The Proposal also expressly referenced and required agreement on certain 'Service Agreement Terms.'" (*Id.* ¶ 19). "Braga/BIAH accepted the Proposal and Braga [and Basis Systems Inc.] issued a series of Purchase Orders to [Quality Uptime] to perform the services outlined in the Proposal." (*Id.* ¶¶ 22, 24-29, 59). In addition to the provision of services, Defendants' purchase orders required Quality Uptime to purchase "specialty materials and parts", which it cannot use for other projects. (*Id.* ¶ 36).

"[Quality Uptime] performed all of the requested services required of it during the first year of the term of the Proposal." (*Id.* ¶ 31). It also began performing those services during the

second year of the contractual term. (*Id.* ¶ 32). "For a while, [Quality Uptime] invoiced for its services and . . . was paid for its services." (*Id.* ¶ 33). "Defendants first stopped paying [Quality Uptime] when [they] failed to pay for services identified on an April. 27, 2022 invoice". (*Id.* ¶ 35). "[A]pproximately mid-way through the second year of the five (5) year contract, Defendants advised [Quality Uptime] that [they] did not want [Quality Uptime] to provide any further services and terminated the contract." (*Id.* ¶ 1). Quality Uptime alleges that Defendants owe them a total of $393,838.14, consisting of $198,948.21 for services and $194,889.93 for materials and parts. (*Id.* ¶¶ 52-54). It further contends that, as a result of Defendants' early termination, it "lost profits in an amount to be ascertained [for] the remaining three and a half years of the [c]ontract." (*Id.* ¶ 55).

Finally, while Quality Uptime initially approached Defendants Braga and BIAH with the Proposal and received purchase orders under that Proposal from Defendants Braga and Basis Systems, Quality Uptime alleges that "Defendants are all one and the same entity and the alter-ego of each other." (*Id.* ¶ 56). Quality Uptime further alleges that "Defendants have collectively communicated with [Quality Uptime] as if each of them intended to and then did contract with [Quality Uptime]. In other words, each Defendant used interchangeably their personal identities with the other Defendants and failed to observe formalities showing that they are separate entities." (*Id.* ¶ 57). Quality Uptime also contends that Defendants "Basis Systems, BIAH and Braga work out of the same office", (*id.* ¶ 62), and that "Basis Systems, BIAH, and Excell have the same employees, do the same business such that they are all alter egos of each other – if they even are separate entities." (*Id.* ¶ 63). "In sum, Defendants collectively co-mingled their employees, contracts and contractual obligations, finances and emails/communications so as to both appear as a single entity and act as a single entity." (*Id.* ¶ 65).

Based on the foregoing allegations, Quality Uptime commenced this matter by filing a Complaint in the Superior Court of New Jersey on or about June 27, 2023. (*Generally* Compl., ECF No. 1-3). It asserted claims for breach of contract (Count One), breach of the covenant of good faith and fair dealing (Count Two), unjust enrichment (Count Three), and account stated (Count Four). (*Id.* at ¶¶ 68-93). Later that day, Quality Uptime filed an Amended Complaint including the same causes of action. (*Generally* Am. Compl., ECF No. 1-3). Defendants removed the case to the United States District Court for the District of New Jersey on July 20, 2023. (ECF No. 1). On October 27, 2023, Defendants filed a motion requesting that the Court dismiss Quality Uptime's claims for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (*Generally* ECF No. 10). In the alternative, Defendants request that the Court transfer this matter to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1406(a). (Def. Br. at 11-12, ECF No. 10-7). That motion is fully briefed and ripe for resolution. (ECF Nos. 12-13, 15).

## II.     LEGAL DISCUSSION

### a.   Motion to Dismiss Pursuant to Rule 12(b)(2)

"Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for lack of personal jurisdiction." *Smith v. Zimmer US, Inc.*, No. 19-cv-06863 (JMV), 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020). In response to a defendant's challenge under that Rule, the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F. 3d 324, 330 (3d Cir. 2009) (internal citations omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v.*

*Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *Metcalfe*, 566 F.3d at 330 ("'[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff.'") (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir.2003)).

### i. The Limits of Personal Jurisdiction

"A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). Therefore, as the United States Court of Appeals for the Third Circuit has observed:

> [a] federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. Thus, parties who have constitutionally sufficient "minimum contacts" with New Jersey are subject to suit there.

*Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citations omitted).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F. 3d at 334. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317, 66 S. Ct. 154, 159, 90 L. Ed. 95 (1945)). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of

5

or relate to those activities.'" *Miller Yacht Sales, Inc.*, 384 F. 3d at 96 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

While Quality Uptime originally alleged that "[t]his Court possesses general jurisdiction over Defendants insofar as Defendants conduct business throughout New Jersey, including in Morris County", (Compl. ¶ 8, ECF No. 1-3), its response to Defendants' motion to dismiss acknowledges that it currently lacks information sufficient to "permit the Court to conclude that general jurisdiction . . . exists over Defendants in this matter." (Pl. Br. at 14, ECF No. 12). Quality Uptime thereafter focuses its argument entirely on the propriety of specific jurisdiction. (*Id.* at 14-19). The Court will therefore center its analysis on whether Defendants' contacts with New Jersey are such that it might fairly be subject to specific jurisdiction here with regard to Quality Uptime's claims.

### ii.    Specific Jurisdiction Analysis

The Court may exercise specific jurisdiction over a defendant when the circumstances of a case satisfy three distinct elements. *Rhulen v. LG Chem Am., Inc.*, No. 16-cv-6924 (JLL), 2018 WL 2230549, at *3 (D.N.J. May 15, 2018) (citing *HS Real Co., LLC et al. v. Sher*, 526 F. App'x. 203, 206 (3d Cir. 2013)). "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum." *Id.* (citing *HS Real Co., LLC*, 526 F. App'x at 206). "Second, 'plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum.'" *Id.* "Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)).

Turning first to the issue of purposeful availment, the Court notes that "the plaintiff must show that the defendant took 'some act by which [it] purposefully avails itself of the privilege of

6

conducting activities within the forum State.'" *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436 (D.N.J. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)).

When determining the propriety of specific jurisdiction, the Court must do so on both a claim-specific and party-specific basis. *E.g.*, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by Remick does not necessarily mean that it has personal jurisdiction over that same defendant as to Remick's other claims."); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) ("Questions of specific jurisdiction are properly tied to the particular claims asserted."). In this case, however, Quality Uptime alleges that Defendants "collectively co-mingled their employees, contracts and contractual obligations, finances and emails/communications so as to both appear as a single entity and act as a single entity." (Am. Compl. ¶ 65, ECF No. 1-3). The Court must accept that allegation as true for the purposes of this motion. *Miller Yacht Sales, Inc.*, 384 F.3d at 97. Quality Uptime argues that Defendants are therefore alter egos of one another, such that each entity's jurisdictional contacts may be imputed to the others. (Pl. Br. at 17, n. 2, ECF No. 12). Defendants appear to have conceded this point. (*See generally* Reply Br., ECF No. 15) (neglecting to address Plaintiff's "alter ego" argument and referring to "Defendants", collectively, throughout); *Sang Geoul Lee v.*

7

*Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("Mr. Lee's failure to respond to the pertinent opposition-brief argument acts as a concession of that argument."). The Court will therefore address Defendants' contacts with New Jersey collectively, as the parties have. It will, however, consider the propriety of specific jurisdiction as to each of Quality Uptime's claims.

### A. Breach of Contract

"In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co.*, 270 F.3d at 150 (citing *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir.1999)); *Trinity Packaging Supply, LLC v. Countrywide Pallet, Inc.*, No. 18-cv-16115 (NLH), 2019 WL 2611101, at *3 (D.N.J. June 26, 2019) ("Such [jurisdictional] contacts "may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties.") (quoting *Burger King*, 471 U.S. at 479). "Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination", *Gen. Elec. Co.*, 270 F.3d at 150, and, given the realities of modern business relationships, electronic contacts may suffice in appropriate circumstances. *Id.* at 150-51. The Third Circuit has also observed that "[i]n the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration" than whether "one or the other party initiated the relationship". *Id.* at 151. In sum, the case law makes clear that "a contract alone does not 'automatically establish sufficient minimum contacts in the other home party's home forum . . ..'" *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Rather, "in contract claims we analyze the totality of the circumstances

surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." *Miller*, 384 F.3d at 99.

Quality Uptime contends that Defendants have made sufficient minimum contacts with New Jersey because: (1) the parties' contract expressly contemplated that Quality Uptime would, at Defendants' direction, perform work in New Jersey for a five year period; and (2) Defendants breached the contract, in part, by failing to pay for such work. (Pl. Br. at 17-19, ECF No. 12). This Court agrees.

While the parties negotiated their contract in New York or Connecticut, their agreement provided that Quality Uptime would provide maintenance services, at Defendants' direction, in several states (including New Jersey) for a period of five years. (Am. Compl. ¶¶ 12-15, ECF No. 1-3). The parties did not include New Jersey randomly. As noted above, the record reflects that they did so in connection with Defendants' existing obligations to provide related services to their customer, Altice, in New Jersey. The parties therefore envisioned a years-long contractual relationship by which Quality Uptime would provide materials and services in New Jersey for Defendants' benefit. The record reflects that is what happened in the parties' actual course of dealing. Of all of the work that Defendants directed Quality Uptime to perform under their agreements, 25% of that work took place in New Jersey "for Defendants' customer's New Jersey locations." (Li Dec. ¶ 5, ECF No. 13). "Of the $198,948.21 of services rendered by Plaintiff for which it seeks payment in this litigation, $42,976.25, or 22%, was performed by Plaintiff in New Jersey for Defendants' customer at . . . 22 different New Jersey locations." (*Id.* ¶ 6) (citation omitted). Defendants therefore repeatedly and deliberately directed Quality Uptime to perform work in New Jersey for Defendants' financial benefit. In light of these facts, the Court finds that Defendants purposefully availed themselves of the privilege of conducting activities in this forum.

9

Next, the Court looks to whether Quality Uptime's contractual claim "'arise[s] out of or relate[s] to at least one of the contacts with the forum.'" *Rhulen*, 2018 WL 2230549, at *3 (quoting *HS Real Co., LLC*, 526 F. App'x. at 206). It plainly does. While the parties appear to have combined Quality Uptime's work in several states together in the same purchase orders, and Quality Uptime has likewise lumped all of its allegedly unpaid invoices into a single breach of contract claim, a substantial portion of that claim pertains to work that Quality Uptime performed in New Jersey (Li Decl. ¶¶ 6-7, ECF No. 13) (reflecting that 22% of the total owed for Plaintiff's services and 32% of the total owed for materials correspond to New Jersey projects). While Defendants argue that this connection to New Jersey is insufficient, as Quality Uptime performed the bulk of its work elsewhere, Defendants have not cited any authority, binding or otherwise, that supports their argument. (Reply Br. at 4, ECF No. 15).[2] Here, Defendants have made contacts with New Jersey and Quality Uptime's contract claim arises, in no small part, from those contacts. The Court finds that Defendants have therefore made sufficient minimum contacts with this forum.

"Having determined that minimum contacts exist, we next consider whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324 (quoting *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 154). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would

---

[2] The single case that Defendants cite, *Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc.*, 597 F.2d 596, 603 (7th Cir. 1979) cert. denied 445 U.S. 907 (1980), does not support their argument. In that matter, the United States Court of Appeals for the Seventh Circuit found that a nonresident business had not made purposeful contacts with Wisconsin by ordering goods from a Wisconsin entity for delivery in Virginia. In reaching that determination, the court reasoned that because the Wisconsin entity had unilateral authority over where it would produce the goods, the nonresident entity did not reach into Wisconsin by simply placing the order. *Id.* Unlike in *Lakeside Bridge*, Defendants here expressly directed where Quality Uptime would perform the maintenance work at issue in the parties' contract.

render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). The United States Court of Appeals for the Third Circuit has observed that this is a "heavy" burden, *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993), which defendants will meet only in "'rare' and 'compelling' cases". *O'Connor*, 496 F.3d at 325.

> Summarizing the relevant Supreme Court guidance on the issue, the Third Circuit wrote:
>
>> The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (quotation marks omitted), and "[t]he procedural and substantive interests of other nations." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*Id.* (citations in original). Here, Defendants argue that their burden in litigating in New Jersey "would be unreasonable given that [they] do not advertise in New Jersey and maintain no presence in New Jersey including owning no real property in New Jersey and having no offices or bank accounts in New Jersey." (Def. Br. at 10, ECF No. 10-7). Defendants have not articulated, however, what actual burdens they might face having to litigate this case in New Jersey as opposed to New York, let alone that those burdens would be so severe as to render jurisdiction here "unreasonable" under Third Circuit law. Defendants' other arguments on this point – that New York has at least as strong of an interest in this case as New Jersey and that Plaintiff would have to "resort to the courts of New York" to collect any judgment, (*id.* at 11), are similarly insufficient. The Court acknowledges that this case presents certain jurisdictional complexities, as it involves work performed in several states under the same contractual arrangement. In that sense, "[New Jersey] may not be the best forum–it may not even be a convenient one. But when minimum contacts exist, due process demands no more than a reasonable forum." *O'Connor* 496 F.3d at

325. As Defendants have not presented a "compelling case of unreasonableness", the Court finds that jurisdiction in in New Jersey 'comports[s] with fair play and substantial justice.'" *Id.* (citation omitted).

For these reasons, this Court respectfully recommends that the District Court deny Defendants' motion with regard to Plaintiff's breach of contract claim.

### B. Unjust Enrichment / Account Stated

The United States Court of Appeals for the Third Circuit has observed that, while the "usual practice is to assess specific jurisdiction on a claim by claim basis . . . 'it may not be necessary to do so' for certain factually overlapping claims." *Id.* at 317, n.3 (quoting *Remick*, 238 F.3d at 255-56). For instance, a separate analysis is not always required for claims that arise out of the same "series of transactions." *B&C Luxury Auto, Ltd. v. Intex Cargo, Inc.*, No. 22-cv-03229 (ES), 2023 WL 2554682, at *4, n.4 (D.N.J. Mar. 17, 2023) ("Here, Plaintiff's common law fraud and book account claims arise out of the same 'series of transactions' as its contract and quasi-contract claims . . . Accordingly, the Court finds that "we need not analyze [the claims] separately.") (citation omitted). Here, Quality Uptime's unjust enrichment and account stated claims arise from the same facts as its claim for breach of contract: Defendants' alleged failure to pay Quality Uptime for the materials and services it provided under the parties' contract. As Defendants would therefore be subject to specific jurisdiction in New Jersey for those claims for the same reasons discussed above in connection with Quality Uptime's contract claim, the Court will not conduct a duplicative analysis.

The Court respectfully recommends that the District Court deny Defendants' motion with regard to Quality Uptime's claims for unjust enrichment and account stated.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

The Court *will* conduct a separate analysis with regard to Quality Uptime's claim for breach of the implied covenant of good faith and fair dealing. As that cause of action is an intentional tort, it is subject to a different standard. *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013). "Specifically, consideration of jurisdiction over [Defendants for that claim] calls for application of the 'effects test' first outlined by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789–91, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)." *Id.* (citation in original). Applying subsequent case law that adopted a "narrow", "'conservative reading'" of *Calder*, (*id.*) *(*quoting *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 265 (3d Cir.1998))*,* the United States Court of Appeals for the Third Circuit employs a "three-pronged effects test [that] requires the plaintiff to show: (1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there." *Id.* (citing *Marten v. Godwin*, 499 F.3d 290, 297 (3d. Cir. 2007). The Third Circuit also specified that "'the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.'" *Id.* (quoting *Marten*, 499 F.3d at 297). "Therefore, '[o]nly if the "expressly aimed" element of the effects test is met need we consider the other two elements.'" *Id.* (brackets in original); *accord Torre v. Kardooni,* No. 22-cv-4693 (SDW), 2022 WL 17813069, at *4 (D.N.J. Nov. 29, 2022), *report and recommendation adopted*, No. 22-cv-4693 (SDW), 2022 WL 17812193 (D.N.J. Dec. 19, 2022).

Quality Uptime has provided three examples of Defendants' alleged breach of the implied covenant of good faith and fair dealing. First, Quality Uptime contends that "Defendants' bad

13

faith conduct includes its refusal, without timely explanation, to pay for invoices." (Am. Compl. ¶ 78, ECF No. 1-3). Second, Quality Uptime refers to Defendants' "belated, baseless and fraudulent excuse of not paying invoices by claiming [Quality Uptime] failed to perform certain services." (*Id.* ¶ 79). Third, Quality Uptime represents that "Defendants' bad faith conduct incudes its improper termination of [Quality Uptime's] services." (*Id.* ¶ 80). Quality Uptime has not made a prima facie showing that Defendants expressly aimed any of those activities toward New Jersey. Nor has it made a prima facie showing that New Jersey is the focal point of the harm caused by Defendants' alleged breaches. As the District of New Jersey therefore lacks specific jurisdiction over Defendants with regard to Quality Uptime's claim for breach of the implied covenant of good faith and fair dealing, the Court respectfully recommends that the District Court grant Defendants' motion to dismiss with regard to that claim.

### b. Transfer Pursuant to 28 U.S.C. § 1406(a)

As an alternative to outright dismissal, Defendants ask the Court to transfer this matter to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1406(a). (Def. Br. at 11-12, ECF No. 10-7). That statute provides: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). On its face, Section 1406(a) applies only where a plaintiff has commenced a matter in a venue that does not meet the requirements of 28 U.S.C. 1391. While Defendants quote 28 U.S.C. 1391 in their briefing, they do not sufficiently analyze the propriety of venue in the District of New Jersey under that statue, other than to note that Defendants are not New Jersey entities. (Def. Br. at 11-12, ECF No. 10-7). For essentially the same reasons described in Section II(a)(ii)(A) above with regard to Defendants' jurisdictional contacts with the forum,

however, the Court finds that venue would be appropriate in this District because "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 U.S.C. § 1391(b)(2). Specifically, a substantial amount of the work underlying Quality Uptime's breach of contract claim is work that Defendants directed Quality Uptime to perform in New Jersey.

Defendants' briefing suggests that they may have intended to seek a transfer of venue "for the convenience of the parties and witnesses" pursuant to 28 U.S.C. § 1404(a). (*See* Def. Br. at 12, ECF No. 10-7) (citing *Markel Ins. Co. v. Masluf Realty Corp.*, No. 13-cv-5057 (ES), 2014 U.S. Dist. LEXIS 41906, *14-15 (D.N.J. Mar. 28, 2014) for its discussion of an application to transfer pursuant to Section 1404(a)). Defendants have not analyzed the propriety of a "convenience" transfer under the relevant law, *see, e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir.1995), and the Court declines to do so *sua sponte*.

As Defendants have not established that transfer is warranted under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a), their motion to transfer this matter should be denied.

### III.  CONCLUSION

Based on the foregoing, it is on this 13th day of June, 2024,

**RECOMMENDED** that the District Court grant Defendants' motion, (ECF No. 10), in part and deny it in part; and it is further

**RECOMMENDED** that the District Court dismiss Count Two of Plaintiff's Amended Complaint (Breach of the Covenant of Good Faith and Fair Dealing) as to all Defendants for lack of personal jurisdiction; and it is further

**RECOMMENDED** that the District Court **DENY** the balance of Defendants' motion.[3]

s/ Cathy L. Waldor
**Hon. Cathy L. Waldor**
**United States Magistrate Judge**

---

[3] In accordance with Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.